# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KYMBERLY S.[1]**, | Case No. 6:22-cv-1230-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Betsy R. Shepherd, Attorney at Law, 425 Riverwalk Manor Drive, Dallas, GA 30132. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Kymberly S. seeks judicial review of the final decision of the Commissioner of the Social

Security Administration (Commissioner) denying Plaintiff's application of Supplemental

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Security Income (SSI) and Disability Insurance Benefits (DIB) pursuant to the Social Security Act. Because the Commissioner's decision is not supported by substantial evidence, the Court reverses the decision and remands for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB and SSI on July 8, 2019, initially alleging an onset day of

April 1, 2016. AR 18, 79. At the hearing, she amended her alleged onset date to April 1, 2019.

AR 42. Born in 1970, Plaintiff was 49 years old on the alleged disability onset date. AR 111.

Plaintiff worked as an industrial welder and then taught welding for a few years. AR 307. She

alleges that she is now unable to work due to chronic back pain, sciatica, scoliosis, depression,

psychosis, and post-traumatic stress disorder. AR 74. Plaintiff suffers from a long history of

methamphetamine and alcohol abuse, with a history of relapse. *See, e.g.*, AR 633, 726, 867,

1100, 1138, 1303. At the hearing in June 2021, she reported her most recent sobriety date was

December 25, 2020. AR 22.

The agency denied Plaintiff's claims both initially, AR 93, and upon reconsideration, AR

140. On December 9, 2020, Plaintiff requested a hearing before an Administrative Law Judge

(ALJ). AR 190. She appeared by telephone for a hearing before ALJ Triplett on June 21, 2021.

AR 40. On August 25, 2021, the ALJ issued a decision denying Plaintiff's claims for benefits.

AR 18-33. Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied her

request for review on June 21, 2022. AR 6. Accordingly, the ALJ's decision became the final

decision of the agency from which Plaintiff now seeks review.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot

perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. The Commissioner bears the burden at step five. If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As an initial matter for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2023. AR 20. At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2019, the alleged onset date. *Id.* At step two, the ALJ found the following severe, medically determinable impairments: substance addiction, scoliosis, post-traumatic stress disorder (PTSD), depressive disorder, anxiety disorder, personality disorder, and degenerative disc disease. AR 21. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except: The individual can frequently climb ramps and
> stairs, but never climb ladders, ropes, or scaffolds. The individual
> can occasionally stoop and crawl. The individual can frequently
> kneel and crouch. The individual can frequently, but not
> constantly, handle and finger bilaterally. The individual can
> perform simple, routine tasks, and can tolerate occasional contact
> with coworkers and the general public. The individual requires
> work breaks at two-hour intervals.

AR 23. At step four, the ALJ found that Plaintiff did not have the ability to perform her past
relevant work. AR 31. At step five, the ALJ found Plaintiff had the ability to perform jobs that
exist in significant numbers in the national economy, specifically as a production assembler,
hand packager, and electrical accessories assembler. AR 31-32. The ALJ then found that Plaintiff
was not disabled under the Act from the alleged onset date of April 1, 2019, through August 25,
2021, the date of the ALJ's decision. AR 32.

## DISCUSSION

Plaintiff argues the ALJ erred: (1) by improperly rejecting Plaintiff's subjective symptom
testimony; (2) by improperly discounting the medical opinions of Daniel Williams, LPC, and
Dr. Andrew Gessel; and (3) by improperly discounting lay witness testimony. The Court
discusses each in turn.

## A. Plaintiff's Subjective Symptom Testimony

### 1. Standard

Plaintiff argues that the ALJ improperly discredited her symptom testimony. There is a
two-step process for evaluating a claimant's testimony about the severity and limiting effect of
the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ
must determine whether the claimant has presented objective medical evidence of an underlying
impairment 'which could reasonably be expected to produce the pain or other symptoms

alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's

location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2.  Analysis

The ALJ discounted Plaintiff's testimony that she could only sit or stand for twenty minutes at a time because (1) despite her complaints of pain she reported to a doctor that she had been snowed in and "had to shovel 4 feet of snow," and that she "[e]njoys bicycling and walking"; and (2) she failed to follow up on an orthopedic referral and did not receive regular treatment for her back pain. AR 26-27.

Regarding Plaintiff's reported activities, the Court finds the references in Plaintiff's medical record that the ALJ relied on ambiguous and insufficient to provide "substantial evidence" to discredit Plaintiff's testimony. Before her alleged onset date, Plaintiff's medical provider noted that Plaintiff reported "decrease in energy and motivation but possibly related to weather and being snowed in. Was able to get out of home today, *had to shovel 4 feet of snow*.

Had a friend drive her as [she] didn't want to be alone." AR 651 (emphasis added). It is not clear from this note who shoveled the snow, and, if it was in fact Plaintiff, whether Plaintiff was able to shovel the snow in a way that was consistent with her testimony, i.e., by taking breaks every twenty minutes.

Similarly, in July 2020, Plaintiff's medical provider noted that Plaintiff "[e]njoys bicycling and walking." AR 1346. But there is no indication whether Plaintiff biked recently or regularly, or whether this was a comment on activities Plaintiff used to enjoy. At the hearing, the ALJ did not ask Plaintiff whether she still was able to ride a bicycle or if she walked and, if so, for how long. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (finding the ALJ erred for failing to develop a record regarding the extent to which and the frequency plaintiff engaged in activities used to discredit testimony). Absent more detail, two ambiguous and vague statements in the medical record are not "substantial evidence" to discredit Plaintiff's testimony.

There also is not substantial evidence to support the ALJ's conclusion that Plaintiff failed to follow up with orthopedic treatment or that she failed to receive more regular treatment for her back pain. In April 2019, Plaintiff's medical provider referred her to an orthopedic doctor, and Plaintiff saw that provider in October. AR 719, 1900. The orthopedic provider changed Plaintiff's pain prescriptions and recommended a follow up appointment the next month. AR 1903. Shortly after that appointment, evidence in the record indicates that Plaintiff was living in her car. AR 1081. If a claimant cannot afford more frequent treatment, gaps in the medical record is not a valid reason to discount symptom testimony. *Orn*, 495 F.3d at 638. Additionally, Plaintiff returned to the same orthopedic provider in June 2021 for further treatment, and at that appointment there was no recommended follow up. AR 1942, 1948. At the hearing, the ALJ did not ask Plaintiff why she did not seek out more regular treatment. *See Peck v. Comm'r of Soc.*

*Sec. Admin.*, 266 F. App'x 582, 584 (9th Cir. 2008) (remanding when "the record reveals that no attempt was made to uncover the explanation, if any, for [plaintiff's] failure to seek medical treatment with greater frequency or that there was any treatment to be obtained"). There is not substantial evidence to support the ALJ's conclusion that Plaintiff's failure to follow up with more regular treatment undermines her testimony.

### 3.  Harmless Error

The ALJ's reasons for discounting Plaintiff's testimony were not supported by substantial evidence. An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability determination"). A court should not automatically reverse on account of error but should make a determination of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Plaintiff testified that she can only sit or stand for twenty minutes at a time, and then needs to lay down or stretch. AR 52-53. Plaintiff's RFC, however, concluded she that she could work, either sitting or standing with no durational limit, and required breaks only at the two-hour mark. AR 23. Because Plaintiff has identified limitations to which she testified that were not incorporated into the RFC, the ALJ's rejection of Plaintiff's testimony was not harmless.

## B.  Medical Opinions

Plaintiff argues that the ALJ improperly evaluated the opinions of Daniel Williams, Plaintiff's licensed professional counselor, and Dr. Andrew Gessel. Plaintiff filed her application for benefits on July 8, 2019. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. §§ 404.1520c and 416.920c govern how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844

(Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency

factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

**1.  Daniel Williams, LPC**

Plaintiff was referred to Williams in October 2019 for group therapy because of a recent relapse. AR 1150. In March 2020, Williams began seeing Plaintiff for individual sessions because Plaintiff's previous therapist left the practice. AR 1302, 1304. Williams saw Plaintiff every few weeks through the next year, except when Plaintiff would miss appointments due to a relapse. *See, e.g.,* AR 1303, 1522.

On May 4, 2021, Williams completed a questionnaire for Plaintiff's disability application, opining on various ways he believed Plaintiff would be unable to stay on task during an 8-hour workday. AR 1919-22. He explained that Plaintiff would be absent from work three days a month due to her "[d]ealing with depression, difficulty scheduling, and forgetfulness," and that she would be off task for 30% of a workday due to "[d]ifficulty focusing, managing moods, and being functionally impaired." AR 1922. Williams stated that Plaintiff's symptoms were at this level of severity since 2012. AR 1921.

The ALJ found Williams' opinion unpersuasive because Plaintiff's work history was in direct contrast to Williams' opinion that she was unable to work full-time since 2012. AR 30. The ALJ noted that Williams did not start seeing Plaintiff until 2019, her oldest mental health

records were from 2016, and Williams offered no explanation for the 2012 impairment date. *Id.*
The ALJ also found Williams' opinion unpersuasive because, despite Plaintiff's long history of
substance abuse, Williams did not address Plaintiff's substance abuse history. *Id.*

      Plaintiff argues that neither of the ALJ's reasons for discrediting Williams' opinion are
supported by substantial evidence. The Court disagrees. First, the ALJ's conclusion that
Williams' 2012 start date for Plaintiff's symptoms is inconsistent with the record is supported by
substantial evidence. Plaintiff's work history directly contradicts Williams' opinion, and the ALJ
did not err in concluding otherwise. AR 307. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th
Cir. 2001) (finding that an ALJ properly discounted a treating physician's opinion for being "so
extreme as to be implausible" and "not supported by any findings" where there was "no
indication in the record" as to the basis for the opinion).

      Second, regarding her substance abuse, Plaintiff argues that the ALJ erred by not
considering Williams' treatment records when evaluating the questionnaire. It is error for an ALJ
to ignore the treatment records when reviewing a questionnaire. *See Garrison v. Colvin*, 759 F.3d
995, 1013 (9th Cir. 2014) (finding the ALJ committed "egregious" error by entirely ignoring
treatment records when evaluating a "check-box form"). But here, Williams' treatment records
do not directly address the interaction between Plaintiff's substance use and her mental
impairments. Williams notes Plaintiff's substance use only twice in his notes. AR 1919, 1909,
1309. First was in a group therapy session where Plaintiff shared that she recently relapsed.
AR 1309. Second was in January 2021 when she shared with Williams that she had established a
sobriety date. AR 1909. Furthermore, "[w]hile an opinion cannot be rejected merely for being
expressed as answers to a check-the-box questionnaire, 'the ALJ may permissibly reject check-
off reports that do not contain any explanation of the bases of their conclusions.'" *Ford v.*

*Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)). Williams' failure to explain how Plaintiff's substance abuse affected Williams' medical opinion was a valid reason for the ALJ to find Williams' opinion not persuasive. Accordingly, both of the ALJ's proffered reasons for not finding Williams' opinion persuasive were supported by substantial evidence in the record.[2]

### 2. Andrew Gessel

Dr. Andrew Gessel saw Plaintiff in December 2019 for her back pain. AR 1081. He reviewed her medical records and physically examined Plaintiff. AR 1081-85. Gessel noted that Plaintiff had "[s]evere dextroscoliosis in the thoracic spine and severe leyoscoliosis in the lumbar spine. She does have some mild tenderness to palpation in both the thoracic and lumbar spine." AR 1085. He also noted her strength was "5/5 in the bilateral upper and lower extremities." *Id.* As relevant to Plaintiff's argument, Gessel also noted that Plaintiff's "[m]aximum standing is up to four hours in an eight-hour workday. I anticipate prolonged mobility will significantly exacerbate back pain and lower extremity symptoms." *Id.*

The ALJ found Gessel's opinion "generally persuasive" but disagreed with Gessel's anticipation that Plaintiff was limited to four hours of standing or walking in an eight-hour workday. AR 27. The ALJ noted that Plaintiff's records "regularly document normal gait and station without issues of instability, and no lower extremity weakness, other than minimal

---

[2] Plaintiff also argues that the ALJ erred at step three of the evaluation process, arguing that Williams' opinion necessitates the conclusion that Plaintiff has an impairment or combination of impairments that meet or medically equal the severity for listings 12.04 and 12.05. Because the ALJ did not err in finding Williams' opinion not persuasive and the ALJ evaluated the remaining relevant evidence before concluding Plaintiff's impairments did not meet or equal a listed impairment, the ALJ did not err. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (explaining an ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment").

weakness of the left ankle noted recently." *Id.* A review of the record supports the ALJ's reasoning. *See* AR 865 (doctor noting in September 2019 that Plaintiff's "[g]ait and station appear within normal limits"); 1021 ("gait steady"); 1902 ("[m]otor strength is 5/5 in the upper and lower extremities" in October 2019); 1356 ("[g]ait and stance was normal" in August 2020); 1947 ("[n]ormal gait. Steady without device" and "[m]otor strength is 5/5 in the upper and lower extremities"). Because the ALJ properly considered the supportability of Gessel's opinion, the Court will uphold the ALJ's decision regarding Gessel's opinion.

## C. Lay Witness Testimony

Finally, Plaintiff argues the ALJ erred by finding the lay opinions of her husband and friend not persuasive. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.") (citations omitted).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Although the ALJ summarized the information provided by Plaintiff's husband and friend, the ALJ did not comment on whether he found the evidence persuasive. Defendant argues that under the new regulations, the ALJ was not required to do so. The Court disagrees. *See Tanya L. L. v. Comm'r of Soc. Sec.*, 526 F. Supp. 3d 858, 869 (D. Or. 2021) ("[T]he amended regulations . . . do not eliminate the need for the ALJ to articulate his assessment of the lay-witnesses statements."). And, even assuming the ALJ rejected the lay-witness testimony for the same reasons he rejected Plaintiff's testimony, such rejection was not supported by substantial evidence as explained above.

**D.  Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d

1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5, 2016). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Here, the ALJ did not provide sufficient reasons supported by substantial evidence in the record for discounting Plaintiff's subjective symptom testimony about her back pain or the lay witness statements. The record, however, is not fully developed or free from all conflicts and ambiguities. Thus, the matter is remanded for further proceedings.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 26th day of July, 2023.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge